PER CURIAM.
The Supreme Court Interpreter’s Committee has filed a petition asking the Court to expedite adoption of Florida Rules for Certification and Regulation of Court Interpreters and new Florida Rule of Judicial Administration 2.073, Appointment of Interpreters for Non-English-Speaking Persons, in response to the recent enactment of chapter 2006-253, Laws of Florida. We have jurisdiction and adopt the new rules on an emergency basis, under Florida Rule of Judicial Administration 2.130(a). See art. V, § 2(a), Fla. Const.
BACKGROUND
In February 2003, the Supreme Court Interpreter’s Committee (Committee) was appointed to evaluate the court system’s ability to effectively deliver court interpreting services to Florida’s citizens. See In re Court Interpreter Rules, Fla. Admin. Order No. AOSC03-8 (Feb. 12, 2003) (on file with Clerk, Fla. Sup.Ct.). The Committee was specifically asked to consider whether rules of procedure regarding court interpreters are needed and to propose any rules the Committee deemed necessary. In fulfilling its charge, the Committee considered the need for (1) a court rule governing the use and management of court interpreter services; and (2) a formal certification program for establishing the qualifications of foreign language court interpreters.
In October 2003, the Committee submitted its report and recommendations to the Court. The Committee recommended that the Court adopt certification rules originally developed by the Trial Court Performance and Accountability Committee’s Court Interpreter Workgroup, as well as *505 rule 2.073, previously approved by the Rules of Judicial Administration Committee.[1] The Committee further recommended that, although it had concluded that this Court possesses inherent authority to adopt standards of training and professional conduct as part of a certification process for court interpreters, the Court should seek statutory authorization and funding to implement the proposed certification program. After considering the Committee’s 2003 report and recommendations, the Court deferred consideration of the proposed rules pending statutory authorization and funding for the certification program. That authorization and funding were received in the last legislative session.
Among other things, chapter 2006-253, § 1, Laws of Florida, effective July 1, 2006,[2] authorizes this Court to “establish minimum standards and procedures for qualifications, certification, professional conduct, discipline, and training” of court appointed foreign language court interpreters.[3] In response to the legislation, the Committee resubmitted for expedited adoption the proposed Florida Rules for Certification and Regulation of Court Interpreters and proposed rule 2.073. After considering the Committee’s 2003 report and recommendations, chapter 2006-253, and the Committee’s petition, we adopt the new rules as proposed.
NEW RULES
According to the Committee, the new Florida Rules for Certification and Regulation of Court Interpreters “establish a system whereby certified or duly qualified foreign language court interpreters are available throughout the state to interpret in criminal, juvenile, and select civil proceedings involving persons who are limited-English proficient.” As adopted, the certification rules are divided into four parts: Part I — General Provisions; Part II — Interpreter Certification; Part III— Code of Conduct; and Part IV — Discipline.
Part I, General Provisions, includes definitions of, among other things, “certified court interpreter” and “duly qualified interpreter,” in rule 14.100. Rule 14.110 creates the Court Interpreter Certification Board, which is given the task of supervising the certification and conduct of persons engaged in foreign language interpreting in the courts.
Part II, Interpreter Certification, establishes, in rule 14.200, Qualification, the requirements that must be met in order to obtain certification. Rule 14.210, Waiver of Examination Requirements, provides the criteria for waiver of the oral proficiency examination requirement and outlines the requirements for reciprocity. The issuance of certificates is governed by rule 14.220; certification renewals are addressed in rule 14.230; and continuing education requirements are outlined in rule 14.240.
Part III, Code of Professional Conduct, is based on the Model Code of Professional *506 Responsibility for Interpreters in the Judiciary. It outlines requirements for accuracy and completeness in rule 14.310, representation of qualifications in rule 14.320, impartiality and avoidance of conflict of interest in rule 14.330, confidentiality in rule 14.340, professional demeanor in rule 14.350, scope of practice in rule 14.360, reporting impediments to performance in rule 14.370, duty to report ethical violations in rule 14.380, and professional development in rule 14.390.
Part IV, Discipline, delineates the conditions under which disciplinary action may be taken against a certified court interpreter, which discipline may take the form of suspension or revocation of certification. Rules 14.410-14.460 set forth a detailed disciplinary process based loosely on those applicable to mediators. See Florida Rules for Certified and Courfr-Appointed Mediators 10.810-10.880. The entire disciplinary process is to be conducted by the Court Interpreter Certification Board, which is divided into an investigative and an adjudicatory arm in a manner similar to the Judicial Qualifications Commission.
As adopted, new Florida Rule of Judicial Administration 2.073, Appointment of Interpreters for Non-English-Speaking Persons, addresses the utilization of foreign language court interpreters. It is intended to provide guidance to a court in determining whether to provide an interpreter to a defendant, witness, or party. Subdivisions (a), Criminal and Juvenile Delinquency Proceedings, and (b), Other Proceedings, list those proceedings in which an interpreter must be appointed by the court. Subdivision (c), Witnesses, incorporates relevant provisions of the Florida Evidence Code into the appointment process. Subdivision (d), Compliance with Title VI of the Civil Rights Act of 1964, requires compliance with applicable federal law. Subdivision (e), Qualifications of Interpreter, mandates the appointment of a certified or duly qualified interpreter whenever possible, but establishes a procedure for appointing a non-certified interpreter under specified circumstances. Finally, subdivision (f) addresses privileged communications.
CONCLUSION
The Court takes this opportunity to thank the Supreme Court Interpreter’s Committee, which was made up of chief judges from five of our judicial circuits,[4] for its thorough, well-reasoned report and recommendations and prompt response to the new legislation. As noted by Chief Judge Farina, Chair of the Committee, in his remarks in the Committee’s report, “[t]he State Court System is obligated to afford all Floridians equal access to the judicial forum.” Chairman’s Remarks, Report and Recommendations. Through our Legislature’s and this Court’s implementation of the Committee’s recommendations, Florida, one of the most culturally diverse states in the nation, now has a reliable certification program for foreign language court interpreters. This program will ensure that justice is dispensed equally throughout our circuits by providing qualified interpreters to assist those who may be disadvantaged by a language barrier in fully participating in the judicial process.
Accordingly, we adopt the Florida Rules for Certification and Regulation of Court Interpreters and new Florida Rule of Judi *507 cial Administration 2.073 as reflected in the appendix to this opinion. The Rules for Certification and Regulation of Court Interpreters and all provisions of Rule of Judicial Administration 2.073, except subdivision (e), shall become effective July 1, 2006, at 12:01 a.m. As recommended by the Committee, in order to give interpreters sufficient time to come into compliance with the certification requirements, subdivision (e), Qualifications of Interpreter, of rule 2.073 shall become effective July 1, 2008, at 12:01 a.m. However, because the new rules were not published for comment prior to their adoption, interested persons shall have sixty days from the date of this opinion in which to file comments with the Court.[5]
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, and BELL, JJ., concur.
CANTERO, J., recused.
APPENDIX
RULES FOR CERTIFICATION AND REGULATION OF COURT INTERPRETERS
I. GENERAL PROVISIONS
RULE 14.100. DEFINITIONS
(a)Certified Court Interpreter. An interpreter who has completed the mandatory requirements as defined by these rules and holds a valid certificate as a certified court interpreter issued by the Office of the State Courts Administrator and is named in the registry of certified court interpreters maintained by the Office of the State Courts Administrator.
(b) Duly Qualified Interpreter. An interpreter who has obtained a passing grade on a written examination, who has attended a two-day orientation program offered by the Office of the State Courts Administrator, who is familiar with Part III of these rules, and who has an understanding of basic legal terminology in both languages.
(c) Board. The Court Interpreter Certification Board.
(d) Court. Any county, circuit or district court of this state or the Supreme Court of Florida.
RULE 14.110. COURT INTERPRETER CERTIFICATION BOARD
(a) Board Composition. The Court Interpreter Certification Board is created to supervise the certification and conduct of persons engaged in foreign language interpreting in the courts. The board shall be under the supervisory authority of the Supreme Court of Florida. It shall be comprised of ten persons, appointed by the chief justice, as follows:
(1) two county court judges;
(2) three circuit court judges;
(3) three trial court administrators; and
(4) two federally certified court interpreters.
*508 (b) Staff. Such staff as may be necessary to administer the program and permit the board to carry out its duties shall be provided by the Office of the State Courts Administrator insofar as funded by the Florida Legislature.
(c) Officers; Quorum. The chief justice shall appoint one of the board members to serve as chair. A majority of the board shall constitute a quorum.
(d) Vacancies. Any vacancy on the board shall be filled by appointment by the chief justice. A person appointed to fill a vacancy shall serve for the remainder of the term of the member being replaced.
(e) Terms. The initial terms of the board members shall be as follows:
(1) One year: a judicial member, a trial court administrator and an interpreter member;
(2) Two years: two judicial members and a trial court. administrator; and
(3) Three years: two judicial members, a trial court administrator and an interpreter member.
Following the initial terms, all terms shall be three years. Members shall be eligible for reappointment.
(f) Duties. The duties of the board shall include:
(1) the certification, regulation, discipline, suspension, and revocation of certification of court interpreters;
(2) the authority to adopt rules governing its operating procedures; and
(3) the authority to make recommendations to the supreme court regarding the amendment of these rules.
(g) Fees. The board shall have the authority to recommend to the supreme court such fees as the board may deem necessary to permit it to carry out its duties, including, but not limited to, orientation fees, examination fees, and renewal fees. All such fees shall be made payable to the State of Florida and shall be nonrefundable.
(h) Records; Registry. The board shall maintain records and minutes of its meetings and all other official actions. It shall also maintain a record of all continuing education hours or credits earned by certified court interpreters. It shall also maintain a registry containing the names, addresses, dates of certification, identification number, and geographic areas where services are available for each certified court interpreter.
(i) Expenses. Members of the board shall serve without compensation. However, they shall be reimbursed for all reasonable expenses incurred in the performance of their duties, in compliance with all rules and statutes governing such reimbursement.
II. INTERPRETER CERTIFICATION
RULE 14.200. QUALIFICATION
All applicants for certification must:
(a) attend a two-day orientation program administered by the Office of the State Courts Administrator;
(b) pass a written examination approved by the board, which shall include an ethics component;
(c) pass an oral proficiency examination approved by the board, unless they qualify for waiver of the examination requirement pursuant to rule 14.210;
(d) take an oath to uphold the Code of Professional Conduct adopted in these rules;
(e) undergo a background check if prescribed by the board; and
(f) agree to obtain hours or credits of continuing education as determined by the *509 board from a continuing education program approved pursuant to these rules.
RULE 14.210. WAIVER OF EXAMINATION REQUIREMENT
(a) Federal Certification. Upon presentation of proof satisfactory to the board, the oral proficiency examination requirement shall be waived for anyone holding a federal courts certificate which is issued by the Administrative Office of the United States Courts and whose name appears on the registry of federally certified interpreters. No other component of certification is waived by this rule.
(b) Reciprocity. Upon presentation of proof satisfactory to the board, the examination requirement shall be waived for anyone who has passed an equivalent examination in another state.
RULE 14.220. ISSUANCE OF CERTIFICATE
Upon satisfactory completion of the specified requirements, the board shall issue a certificate which shall include an identification number and date of issue. Once issued, the certificate shall remain renewable unless suspended or revoked by the board.
RULE 14.230. RENEWAL OF CERTIFICATE
(a) Biennial Renewal Fee. Each certified court interpreter shall pay a biennial renewal fee in an amount set by the supreme court. A certificate shall be suspended automatically upon non-payment, but shall be reinstated upon application to the board, accompanied by payment and made within 60 days of the date of suspension. Upon expiration of the 60-day grace period, any request for reinstatement must be made pursuant to rule 14.450.
(b) Notification. The board shall notify all certified court interpreters in writing of the expiration date of their certificates at least 90 days before such date. Notice shall be given by regular United States mail, directed to the last mailing address on file with the board.
RULE 14.240. CONTINUING EDUCATION
(a) Requirement. Each certified court interpreter shall earn hours or credits of continuing education as determined by the board every two years. Application for approval of the continuing education credit shall be made in writing on a form approved by the board. The form shall be furnished at the same time as notification is mailed, and completed and returned to the board at the same time the renewal fee is submitted.
(b) Approved Programs. The board shall keep and maintain a list of approved continuing education programs. Approval of an educational program or activity not listed shall be at the board’s discretion and subject to approval on a case-by-case basis.
III. CODE OF PROFESSIONAL CONDUCT
RULE 14.300. PROFESSIONAL CONDUCT
Each certified court interpreter shall act in a professional manner in keeping with the Code of Professional Conduct as set forth herein. Failure to adhere to the Code may lead to disciplinary action. Disciplinary action is at the discretion of the board.
RULE 14.310. ACCURACY AND COMPLETENESS
Interpreters shall render a complete and accurate interpretation or sight transía *510 tion, without altering, omitting, summarizing, or adding anything to what is stated or written, and without explanation.
Committee Notes
The interpreter has a twofold duty: (1) to ensure that the proceedings in English reflect precisely what was said by a non-English speaking person, and (2) to place the non-English speaking person on an equal footing with those who understand English. This creates an obligation to conserve every element of information contained in a source language communication when it is rendered in the target language.
Therefore, interpreters are obligated to apply their best skills and judgment to preserve faithfully the meaning of what is said in court, including the style or register of speech. Verbatim, “word for word” or literal oral interpretations are not appropriate when they distort the meaning of the source language, but every spoken statement, even if it appears nonrespon-sive, obscene, rambling, or incoherent should be interpreted. This includes apparent misstatements and ambiguities.
Interpreters should never interject their own words, phrases, or expressions. If the need arises to explain an interpreting problem (for example, a term or phrase with no direct equivalent in the target language or a misunderstanding that only the interpreter can clarify), the interpreter should ask the court’s permission to provide an explanation. Interpreters should convey the emotional emphasis of the speaker without reenacting or mimicking the speaker’s emotions, or dramatic gestures. Sign language interpreters, however, must employ all of the visual cues that the language they are interpreting for requires, including facial expressions, body language, and hand gestures. Sign language interpreters, therefore, should ensure that court participants do not confuse these essential elements of the interpreted language with inappropriate interpreter conduct.
The obligation to preserve accuracy includes the interpreter’s duty to correct any error of interpretation discovered by the interpreter during the proceeding. Interpreters should demonstrate their professionalism by objectively analyzing any challenge to them performance.
RULE 14.320. REPRESENTATION OF QUALIFICATIONS
Interpreters shall accurately and completely represent their certifications, training, and pertinent experience.
Committee Notes
Acceptance of a case by an interpreter conveys linguistic competency in legal settings. Withdrawing or being asked to withdraw from a case after it begins causes a disruption of court proceedings and is wasteful of scarce public resources. It is therefore essential that interpreters present a complete and truthful account of their training, certification and experience prior to appointment so the court can fairly evaluate them qualifications for delivering interpreting services.
RULE 14.330. IMPARTIALITY AND AVOIDANCE OF CONFLICT OF INTEREST
Interpreters shall be impartial and unbiased and shall refrain from conduct that may give an appearance of bias. Interpreters shall disclose any real or perceived conflict of interest.
Committee Notes
The interpreter serves as an officer of the court, and the interpreter’s duty in a court proceeding is to serve the court and the public to which the court is a servant. This is true regardless of whether the interpreter is publicly retained at govern *511 ment expense or retained privately at the expense of one of the parties.
The interpreter should avoid any conduct or behavior that presents the appearance of favoritism toward any of the parties. Interpreters should maintain professional relationships with their clients, and should not take an active part in any of the proceedings. The interpreter should discourage a non-English speaking party’s personal dependence. During the course of the proceedings, interpreters should not converse with parties, witnesses, jurors, attorneys, or with friends of relatives of any party, except in the discharge of their official functions. It is especially important that interpreters, who are often familiar with attorneys or other members of the courtroom work group, including law enforcement officers, refrain from casual and personal conversation with anyone in the court that may convey an appearance of a special relationship or partiality to any of the court participants.
The interpreter should strive for professional detachment. Verbal and nonverbal displays of personal attitudes, prejudices, emotions, or opinions should be avoided at all times.
Should an interpreter become aware that a participant in the proceedings views the interpreter as having a bias or being biased, the interpreter should disclose that knowledge to the appropriate judicial authority and counsel. Any condition that interferes with the objectivity of an interpreter constitutes a conflict of interest. Before providing services in a matter, court interpreters must disclose any prior involvement to all parties and presiding officials, whether personal or professional, that could be reasonably construed as a conflict of interest. This disclosure should not include privileged or confidential information.
The following are examples including, but not limited to, circumstances that are presumed to create factual or apparent conflicts of interest for interpreters where interpreters should not serve:
(1) The interpreter is a friend, associate, or relative of a party or counsel for a party involved in the proceeding.
(2) The interpreter has served in an investigative capacity for any party involved in the proceeding.
(3) The interpreter has previously been retained by a law enforcement agency to assist in the preparation of the criminal case at issue.
(4) The interpreter or the interpreter’s spouse or child has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that would be affected by the outcome of the case.
(5) The interpreter has been involved in the choice of a counsel or law firm for that case.
Interpreters should disclose to the court and other parties when they have previously been retained for private employment by one of the parties in the case.
An interpreter should not serve in any matter in which payment for his or her services is contingent upon the outcome of the case.
Court interpreters will not accept money or other consideration or favors of any nature or kind which might reasonably be interpreted as an attempt to influence their actions with respect to the discharge of their obligations except for the authorized payment for services.
An interpreter who is also an attorney should not serve in both capacities in the same matter. Interpreters should notify the presiding officer of any personal bias *512 they may have involving any aspect of the proceeding. For example, an interpreter who has been the victim of a sexual assault may wish to be excused from interpreting in cases involving similar offenses.
RULE 14.340. CONFIDENTIALITY AND RESTRICTION OF PUBLIC COMMENT
Interpreters shall protect the confidentiality of all privileged and other confidential information. Furthermore, interpreters shall not publicly discuss, report, or offer an opinion concerning a matter in which they are or have been engaged, even when that information is not privileged or required by law to be confidential.
Committee Notes
The interpreter must protect and uphold the confidentiality of all privileged information obtained during the course of her or his duties. It is especially important that the interpreter understand and uphold the attorney-client privilege, which requires confidentiality with respect to any communication between attorney and client.
This rule also applies to other types of privileged communications, except upon court order to the contrary.
Interpreters must also refrain from repeating or disclosing information obtained by them in the course of their employment that may be relevant to the legal proceeding.
In the event that an interpreter becomes aware of information that suggests imminent harm to someone or relates to a crime being committed during the course of the proceedings, the interpreter should immediately disclose the information to an appropriate authority within the judiciary who is not involved in the proceeding and seek advice in regard to the potential conflict in professional responsibility. An interpreter should never grant interviews to the media, make comments, or express personal opinions to any of the parties about any aspect of the case even after a verdict is rendered.
RULE 14.350. PROFESSIONAL DEMEANOR
Interpreters shall conduct themselves in a manner consistent with the dignity of the court and shall be as unobtrusive as possible.
Committee Notes
Interpreters should know and observe the established protocol, rules, procedures, and dress code when delivering interpreting services. When speaking in English, interpreters should speak at a rate and volume that enables them to be heard and understood throughout the courtroom, but the interpreter’s presence should otherwise be as unobtrusive as possible. Interpreters should work without drawing undue or inappropriate attention to themselves. Interpreters should dress in a manner that is consistent with the dignity of the proceeding of the court. Interpreters shall refrain from making any type of referral.
Interpreters shall adhere to all instructions given by the court in which their services are being used.
RULE 14.360. SCOPE OF PRACTICE
Interpreters shall limit themselves to interpreting or translating, and shall not give legal advice, express personal opinions to individuals for whom they are interpreting, or engage in any other activities which may be construed to constitute a service other than interpreting or translating while serving as an interpreter.
*513 Committee Notes
Since interpreters are responsible only for enabling others to communicate, they should limit themselves to the activity of interpreting or translating. Interpreters should refrain from initiating communications while interpreting unless it is necessary for assuring an accurate and faithful interpretation.
Interpreters may be required to initiate communications during a proceeding when they find it necessary to seek assistance in performing their duties. In this ease, the interpreter should ask the Court’s permission to initiate the communication. Examples of such circumstances include seeking direction when unable to understand or express a word or thought, requesting speakers to moderate their rate of communication or repeat or rephrase something, correcting their own interpreting errors, or notifying the court of reservations about their ability to satisfy an assignment competently. In such instances, they should make it clear that they are speaking for themselves. (This is achieved by using the third person — example: “The interpreter requests that the question be repeated, clarified, etc.... ”).
An interpreter may convey legal advice from an attorney to a person only while that attorney is giving it. An interpreter should not explain the purpose of forms, services, or otherwise act as counselors or advisors unless they are interpreting for someone who is acting in that official capacity. The interpreter may translate language on a form for a person who is filling out the form, but may not explain the form or its purpose for such a person.
The interpreter should not personally perform official acts that are the official responsibility of other court officers, including, but not limited to, court clerks, pretrial release investigators or interviewers, or probation counselors.
RULE 14.370. ASSESSING AND REPORTING IMPEDIMENTS TO PERFORMANCE
Interpreters shall assess their ability to deliver their services at all times. When interpreters have any reservation about their ability to satisfy an assignment competently, they shall immediately convey that reservation to the appropriate judicial authority.
Committee Notes
If the communications mode or language of the non-English speaking person cannot be readily interpreted, the interpreter must immediately notify the appropriate judicial authority.
Interpreters should notify the appropriate judicial authority of any environmental or physical limitation that impedes or hinders their ability to deliver interpreting services adequately (for example, the court room is not quiet enough for the interpreter to hear or be heard by the non-English speaker, more than one person at a time is speaking, or principals or witnesses of the court are speaking at a rate of speed that is too rapid for the interpreter to adequately interpret). Sign language interpreters must ensure that they can both see and convey the full range of visual language elements that are necessary for communication, including facial expressions and body movement, as well as hand gestures.
Interpreters should notify the presiding officer of the need to take periodic breaks to maintain mental and physical alertness and prevent interpreter fatigue. Interpreters should recommend and encourage the use of team interpreting whenever necessary.
*514 Interpreters are encouraged to make inquiries as to the nature of a case whenever possible before accepting an assignment. This enables interpreters to match more closely their professional qualifications, skills, and experience to potential assignments and more accurately assess their ability to satisfy those assignments competently. Even competent and experienced interpreters may encounter cases where routine proceedings suddenly involve technical or specialized terminology unfamiliar to the interpreter (for example, the unscheduled testimony of an expert witness). When such instances occur, interpreters should request a brief recess to familiarize themselves with the subject matter. If familiarity with the terminology requires extensive research, interpreters must inform the presiding officer.
Interpreters should refrain from accepting a case if they feel the language and subject matter of that case are likely to exceed their skills or capacities. Interpreters should feel no compunction about notifying the presiding officer if they feel unable to perform competently, due to lack of familiarity with terminology, preparation, or difficulty in understanding a witness or defendant. Because of the difficulty in translating sound recordings, the practice of doing so in court should be discouraged at all times. In certain instances, the presiding officer will order the interpreter to translate in court an audio recording. In such case, the interpreter should do it, but should state on the record that he or she cannot certify the accuracy of the translation.
RULE 14.380. DUTY TO REPORT ETHICAL VIOLATIONS
Interpreters shall report any effort to impede or influence their compliance with any law, any provision of this Code, or any other official policy governing court interpreting and legal translating to the proper judicial authority.
Committee Notes
Because the users of interpreting services frequently misunderstand the proper role of the interpreter, they may ask or expect the interpreter to perform duties or engage in activities that run counter to the provisions of this code or other laws, regulations, or policies governing court interpreters. It is incumbent upon the interpreter to inform such persons of his or her professional obligations. If, having been apprised of their obligations, the person persists in demanding that the interpreter violate them, the interpreter should turn to a supervisory interpreter, the judge, or another official with jurisdiction over interpreter matters to resolve the situation.
Interpreters must at all times during court proceedings interpret everything that is being said on the record, including, but not limited to jury instructions and comments made by the defendants or other participants in the proceeding unless directed to the contrary by the court on the record. Interpreters shall refrain from altering, amending, or omitting any statements made on the record even if asked by a court officer or any other party. Interpreters faced with such a request must immediately inform the party in question that this would constitute a direct violation of the interpreters’ code of ethics and refuse to comply with such demand.
RULE 14.390. PROFESSIONAL DEVELOPMENT
Interpreters shall continually improve their skills and knowledge and advance the profession through activities such as professional training, continuing education, and interaction with colleagues and specialists in related fields.
*515 Committee Notes
Interpreters must continually strive to increase their knowledge of the languages they work in professionally, including past and current trends in technical, vernacular, and regional terminology as well as their application within court proceedings.
Interpreters should keep informed of all statutes, rules of courts, and policies of the judiciary that relate to the performance of their professional duties. An interpreter should seek to elevate the standards of the profession through participation in workshops, professional meetings, interaction with colleagues, coursework, and reading current literature in the field.
IV. DISCIPLINE
RULE 14.400. SUSPENSION OR REVOCATION OF CERTIFICATION
A certificate issued pursuant to these rules may be suspended or revoked for any of the following reasons:
(a) conviction of a felony or misdemean- or involving moral turpitude, dishonesty, or false statements;
(b) fraud, dishonesty, or corruption which is related to the functions and duties of a court interpreter;
(c) continued false or deceptive advertising after receipt of a cease and desist notice from the board;
(d) gross incompetence or unprofessional or unethical conduct;
(e) fraud or misrepresentation in obtaining or renewing certification;
(f) noncompliance with continuing education requirements; or
(g) nonpayment of renewal fees.
RULE 14.410. DISCIPLINARY PROCEDURES
(a) Initiation. Disciplinary proceedings may be initiated by a standard form asserting a violation of these rules. The complaint shall be in writing under oath and filed with the Office of the State Courts Administrator. The board may initiate disciplinary proceedings on its own motion. The board shall be divided into an investigative committee and a hearing panel, as established by rules of the board.
(b) Facial Sufficiency. If a majority of the investigative committee, after an in-person or conference call meeting, finds that the allegations, if true, would constitute a violation of these rules, it shall send a copy of the complaint identifying the rule or rules alleged to have been violated to the certified court interpreter by certified United States mail directed to the last mailing address on file with the board. If the complaint is found to be facially insufficient, the complaint shall be dismissed without prejudice and the complainant and interpreter shall be so notified.
(c) Response. Within 30 days of the issuance of a finding of facial sufficiency, the certified court interpreter shall file a written response with the investigative committee. If no response is filed, the violations identified in the finding of facial sufficiency shall be deemed admitted.
(d) Review. Upon review of the complaint and the interpreter’s response, if any, the investigative committee may find that no violation has occurred and dismiss the complaint. If the complaint is not dismissed, the investigative committee shall review the complaint, the response, if any, and any underlying documentation, to determine whether there is probable cause to believe that the alleged misconduct occurred and would constitute a violation of the rules. The investigative committee may conduct a further investigation if war *516 ranted. The investigative committee may also meet with the complainant and interpreter in an attempt to resolve the matter. Such resolution may include sanctions if agreed to by the interpreter.
(e) Probable Cause Found. If probable cause exists, the investigative committee may draft formal charges and forward such charges for a hearing. In the alternative, the investigative committee may decide not to pursue the case by filing a short and plain statement of the reason(s) for non-referral and so advise the complainant and the interpreter in writing. If formal charges are filed, they shall include a short and plain statement of the matters asserted in the complaint and references to the particular rules involved.
(f) Hearing Panel Review. Within 60 days after the filing of the formal charges, the hearing panel shall review the complaint, the finding of probable cause, and the response, if any, and decide whether to (i) dismiss the proceeding, (ii) issue a proposed disposition, or (iii) set a hearing. The hearing panel shall promptly send written notice of its decision to the certified court interpreter and to the complainant by certified United States mail, return receipt requested.
(g) No Hearing Demanded. A proposed disposition issued pursuant to subdivision (f)(ii) shall become final unless the certified court interpreter demands a hearing within 30 days of the date on which it was issued.
(h) Hearing Demanded. If the certified court interpreter demands a hearing in a timely manner, the hearing shall take place no less than 30 days nor more than 90 days from the date of notice pursuant to subdivision (f)(iii) or of the court interpreter’s demand pursuant to subdivision (g).
(i) Legal Representation. The certified court interpreter may be represented by an attorney at any stage of the proceeding. The court interpreter shall be responsible for all of his or her costs and expenses, including attorney’s fees.
RULE 14.420. DISCIPLINARY HEARINGS
(a) Pre-Hearing Discovery. Pre-hear-ing discovery shall not be permitted unless expressly authorized by the hearing panel, in response to a written request.
(b) Rules of Evidence. Strict rules of evidence shall not apply. The hearing panel may, in its discretion, consider any evidence presented, including affidavits, giving such evidence the weight it deems appropriate.
(c) Hearings to be Reported or Electronically Recorded. The hearing panel shall ensure that all hearings are reported or electronically recorded.
(d) Hearing Procedure. At the hearing, both the hearing panel and the certified court interpreter shall be afforded the opportunity to introduce documents and other relevant evidence, and to elicit sworn testimony.
(e) Hearing Panel Deliberations. Following the presentation of evidence, the hearing panel shall deliberate regarding its decision. Such deliberations shall take place in private.
(f) Finality of Decision; Rehearing. Unless the certified court interpreter files a request for rehearing within 30 days of the date of the decision, the decision shall become final without further action. If a timely request for rehearing is filed, the decision shall not become final until the request has been disposed of by written decision, a copy of which shall be sent to the certified court interpreter by certified United States mail.
*517 RULE 14.430. DISCIPLINARY DISPOSITIONS
(a) Burden of Proof. If the hearing panel finds that there is clear and convincing evidence that the certified court interpreter has violated one or more of these rules, it shall impose such discipline as it may deem appropriate, consistent with these rules.
(b) Vote Required; Notification. All decisions of the hearing panel shall be by majority vote, in writing and, if adverse to the certified court interpreter, shall contain factual findings supporting the decision. A copy of the decision shall be sent to the certified court interpreter by certified United States mail.
(c) Sanctions. Sanctions may consist of one or more of the following:
(1) a private reprimand;
(2) a public reprimand;
(3) the imposition of costs and expenses incurred by the hearing panel in connection with the proceeding, including investigative costs;
(4) restitution;
(5) a requirement that specified continuing education courses be taken;
(6) a requirement that one or more parts of the certified court interpreter examination be successfully taken or retaken;
(7) a limitation on the scope of practice or interpreting services;
(8) a requirement that work be supervised;
(9) suspension of certification for a period not to exceed 1 year; or
(10) revocation of certification.
RULE 14.440. CONFIDENTIALITY OF DISCIPLINARY PROCEEDINGS
When a disciplinary proceeding is either dismissed or results in a private reprimand, all records of the proceeding shall remain confidential; otherwise, all such records shall become public when the hearing panel’s decision becomes final.
RULE 14.450. REINSTATEMENT
A certified court interpreter whose certificate has been suspended or revoked may, at any time, apply in writing for reinstatement. Such request shall explain why the applicant believes that he or she should be reinstated, and shall be accompanied by a renewal fee in an amount set by the board. Whether to grant or to deny such a request shall rest in the sole and absolute discretion of the board. The board may impose such conditions upon reinstatement as it deems appropriate.
RULE 14.460. CHIEF JUSTICE REVIEW
Any interpreter found to have committed a violation of these rules shall have a right of review by the chief justice, whose decision shall be final.
RULES OF JUDICIAL ADMINISTRATION
RULE 2.073. APPOINTMENT OF INTERPRETERS FOR NON-ENGLISH-SPEAKING PERSONS
(a) Criminal or Juvenile Delinquency Proceedings. In any criminal or juvenile delinquency proceeding in which a non-English-speaking person is the accused, an interpreter for the non-English-speaking person shall be appointed. In any criminal or juvenile delinquency proceeding in which a non-English-speaking person is a victim, an interpreter shall be appointed *518 unless the court finds that the victim does not require the services of a court-appointed interpreter.
(b) Other Proceedings. In all other proceedings in which a non-English-speaking person is a litigant, an interpreter for the non-English-speaking litigant shall be appointed if the court determines that the litigant’s inability to comprehend English deprives the litigant of an understanding of the court proceedings, that a fundamental interest is at stake (such as in a civil commitment, termination of parental rights, paternity, or dependency proceeding), and that no alternative to the appointment of an interpreter exists.
(c) Witnesses. In any proceeding in which a non-English-speaking person is a witness, the appointment of an interpreter shall be governed by the applicable provisions of the Florida Evidence Code.
(d) Compliance with Title VI of the Civil Rights Act of 1964. In making determinations regarding the appointment of an interpreter, the court should ensure compliance with the requirements of Title VI of the Civil Rights Act of 1964.
(e) Qualifications of Interpreter.
(1) Appointment of Interpreters when Certified or Duly Qualified Interpreters Are Available. Whenever possible, a certified or duly qualified interpreter, as defined in the Rules for Certification and Regulation of Court Interpreters, shall be appointed.
(2) Appointment of Interpreters when Certified or Duly Qualified Interpreters Are Unavailable. If, after diligent search, a certified or duly qualified interpreter is not available, an interpreter who is neither certified nor duly qualified may be appointed if the judge or hearing officer presiding over the proceeding finds that:
(A) good cause exists for the appointment of an interpreter who is neither certified nor duly qualified, such as the prevention of burdensome delay, the request or consent of the non-English-speaking person, or other unusual circumstance; and
(B) the proposed interpreter is competent to interpret in the proceedings.
(3) Qn-the-Record Objections or Waivers in Criminal and Juvenile Delinquency Proceedings. In any criminal or juvenile delinquency proceeding in which the interpreter is neither certified nor duly qualified, the court shall advise the accused, on the record, that the proposed interpreter is not certified or duly qualified pursuant to the Rules for Certification and Regulation of Court Interpreters. The accused’s objection to the appointment of a proposed interpreter, or the accused’s waiver of the appointment of a certified or duly qualified interpreter, shall also be on the record.
(4) Additional on-the-Record Findings, Objections, and Waivers Required at Subsequent Proceedings. The appointment of an interpreter who is neither certified nor duly qualified shall be limited to a specific proceeding and shall not be extended to subsequent proceedings in a case without additional findings of good cause and qualification as required by subdivision (e)(2) of this rule, and additional compliance with the procedures for on-the-record objections or waivers provided for in subdivision (e)(3) of this rule.
(f) Privileged Communications. Whenever a person communicates through an interpreter to any person under circumstances that would render the communication privileged and such person could not be compelled to testify as to the communi *519 cation, the privilege shall also apply to the interpreter.

. Proposed rule 2.073 was previously approved by the Florida Bar Rules of Judicial Administration Committee. See Letter from Chair of Rules of Judicial Administration Committee contained in appendix E of Supreme Court Interpreter’s Committee Report and Recommendations.

. See ch. 2006-253, § 2, Laws of Fla.

.The 2006-07 Appropriations Bill, chapter 2006-25, section 7, at 393, Laws of Florida (appropriation 3238), funded the certification program, and chapter 2006-253, section 1 further authorizes the Court to set fees to charge to applicants for certification and renewal of certification and provides that the revenues generated from those fees shall be used to offset the costs of administration of the certification program.

. The Honorable Joseph P. Farina, Chair, Chief Judge, Eleventh Judicial Circuit; The Honorable Stan R. Morris, former Chief Judge, Eighth Judicial Circuit; The Honorable Manuel Menendez, Jr., Chief Judge, Thirteenth Judicial Circuit; The Honorable Judy Pittman, former Chief Judge, Fourteenth Judicial Circuit; The Honorable Edward H. Fine, former Chief Judge, Fifteenth Judicial Circuit.

. An original and nine paper copies of all comments must be filed with the Court on or before August 28, 2006, with a certificate of service verifying that a copy has been served on the committee chair, The Honorable Joseph P. Farina, Dade County Courthouse, 73 West Flagler Street, Miami, Florida 33130, as well as a separate request for oral argument if the person filing the comment wishes to participate in oral argument, which may be scheduled in this case. The committee chair has until September 18, 2006, to file a response to any comments filed with the Court. Electronic copies of all comments also must be filed in accordance with the Court’s administrative order In re Mandatory Submission of Electronic Copies of Documents, Fla. Admin. Order No. AOSC04-84 (Sept. 13, 2004).